**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| LETICIA WHITE, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:24-CV224 |
| | § | |
| FOLLETT HIGHER EDUCATION | § | |
| GROUP, LLC, | § | |
| | § | |
| *Defendant*. | § | |

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Defendant Follett Higher Education Group, LLC, ("Follett" or "Defendant") files its Motion for Summary Judgment seeking dismissal of all claims asserted by Plaintiff. In support of its Motion, Follett shows the following:

## I.    NATURE AND STAGE OF THE PROCEEDING AND PLAINIFF'S DROPPING OF HER RETALIATION CLAIM.

This is an employment discrimination case wherein Plaintiff has sued Follett, asserting the following claims under Chapter 21 of the Texas Labor Code: (1) Age Discrimination - Termination (Count I), (2) Age Discrimination - Failure to Rehire (Count II), (3) Gender Discrimination - Termination (Count III), (4) Gender Discrimination – Failure to Rehire (Count IV) and, (5) Retaliation (Count V). However, during Plaintiff's deposition, Plaintiff's counsel, Mr. John Wenke, stipulated on the record that Plaintiff was abandoning her retaliation claim.

> **Mr. Wenke: ... I've made a decision to drop the retaliation claim.**

> **Mr. Mitchell: Great.**

1

**Mr. Wenke: And haven't had a chance to file an amended petition, but will do so - -**

*(T.72:22-73:1)*[1]. As discussed below, Plaintiff's remaining claims should be dismissed as a matter of law.

Plaintiff originally filed this case in state court on May 28, 2024. After being served with Plaintiff's Original Petition, Defendant filed its Answer on June 30, 2024. Thereafter, Defendant timely removed this case to this Court on July 1, 2024. Dkt. No. 1. Plaintiff's live pleading is attached as Exhibit A to Defendant's Notice of Removal.

The parties have engaged in written discovery. Defendant took Plaintiff's deposition on April 15, 2025. Plaintiff also deposed four Follett employees on April 16, 2025. The deadline for completion of discovery was May 15, 2025. Dkt. No. 9. The deadline for filing dispositive motions is July 10, 2025. *Id*. Docket call is set for November 3, 2025. *Id*.

## II.    SUMMARY OF ARGUMENT

Plaintiff's discrimination claims fail as a matter of law. Follett has articulated and produced evidence regarding its legitimate, non-discriminatory reason(s) for terminating Plaintiff's employment, and not rehiring her. Specifically, Plaintiff's employment was terminated as part of Follett's company-wide restructuring that resulted in all similarly situated employees like Plaintiff (regardless of their sex or age) losing their Assistant Store Manager position. Moreover, Plaintiff was not rehired because, as she admitted in her deposition, she never (re)applied for any position

---

[1] A true and correct copy of documents that Plaintiff authenticated in her deposition are attached as separately designated exhibits to this Motion. Also attached to this Motion is a true and correct copy of excerpts from Plaintiff's deposition transcript, which are attached as Exhibit G. The transcript excerpts are referred to as "T" followed by the page number where the testimony appears, and then followed by a colon and then the line number(s) where the testimony appears.

at Follett after she was let go. Plaintiff has no evidence to rebut the articulated, well-documented, and non-discriminatory reason(s) for Follett's employment decisions.

### III.    STATEMENT OF UNDISPUTED MATERIAL FACTS.

**A.    <u>Follett is committed to providing a workplace that is free of any form of wrongful discrimination, harassment, and/or retaliation.</u>**

Follett has robust policies prohibiting discrimination in the workplace. *See Exhibit A*.

Follett's Equal Employment Opportunity ("EEO") Policy states the following:

> "The Company policy is to provide employment opportunities to all individuals, including job applicants and team members in a non-discriminatory manner. The Company strictly prohibits discrimination in employment based on any protected class, including but not limited to, race, color, **gender**, gender identity, religion, creed, national origin, nationality, ancestry, **age**, present or past history of mental or physical disability, perceived mental or physical disability, genetic information, marital status, familial status, sex, pregnancy, affectional or sexual orientation, domestic partnership or civil union status, atypical hereditary cellular or blood trait, AIDS and HIV status, veteran status ... or any other protected characteristic. This policy means that all employment actions and practices including selection, hiring, promotion, training, compensation, benefits, transfer, termination, layoff, tuition reimbursement, Company sponsored social activities, and corrective action will be made without regard to a person's protected status." (Emphasis added) *Id*.

Furthermore, Follet specifically prohibits retaliation: "The Company prohibits any form of retaliation because team members or applicants have raised a good faith concern, filed a complaint or assisted in a review, investigation or hearing related to equal employment opportunities or discrimination." *Id*.

As a proactive measure, Follett maintains various reporting channels to foster an open-door environment for employees to report suspected violations of company policy, including those set forth above. Follett's internal complaint procedure explicitly provides that:

> "The Company policy is to treat all team members with dignity and respect and provide an environment fostering open communication. The Company recognizes that a team member may occasionally have a complaint or concern regarding a work-related issue, illegal activity or other situation that may be in violation of any company policy, the Follett Code of Conduct, or any federal, state or local laws and regulations. Follett supports an open-door philosophy in which team members are

3

encouraged to immediately report their concerns to management, Human Resources, Asset Protection and/or the Ethics and Compliance Line, without fear of retaliation. *Id.*

B.  **Plaintiff worked as an Assistant Store Manager at Follett.**

Plaintiff became the Assistant Store Manager for its Store 1006 located on the campus of The University of Texas at El Paso in 2016. *See Exhibit B.* Essentially, Plaintiff's job was to support the Store Manager in the oversight of the store operations. *See Exhibit C; T.51:13-25.*

C.  **Follet restructured the entire company.**

In the Spring of 2023, Follett underwent a company-wide restructuring to address changing market conditions, enhance competitiveness, and position the company for future growth. *See Exhibit H.* The primary objectives of this restructuring action included improving operational efficiency, reducing costs, and streamlining the organizational structure. As part of the restructuring process, there were changes in the organizational retail operations structure, including departmental realignments and adjustments to job roles. *Id.*

Certain roles were eliminated or relocated to other parts of Follett. *Id.* Some Follett bookstores had both an Operations Manager role and an Assistant Store Manager role, while some stores did not. Store 1006 was one of the bookstores that had both roles. In an effort to streamline store operations and increase efficiency, the Operations Manager role was eliminated, and the Assistant Store Manager role was expanded to assume the duties of the Operations Manager. *Id.* Follett also decided that, for its stores that had both an Operations Manager and an Assistant Store Manager, absent any relevant disciplinary history and/or performance issues of the Operations Manager, Follett would offer the Assistant Store Manager role to the Operations Manager, resulting in the Assistant Store Manager in such stores losing that position, but being able to apply for other open positions if they chose to do so. *Id.*

Mr. Raul Pantoja (who was age 56 at the time) held the Operations Manager role at Store 1006 where Plaintiff worked. *Id.* As a result of the restructuring, Mr. Pantoja's role as Operations Manager was eliminated. Mr. Pantoja along with 24 other Operations Managers were offered the Assistant Store Manager role in the stores where they worked, and Mr. Pantoja accepted the role offered to him. Mr. Pantoja had been employed by Follett since 1989 (i.e., for about 34 years at the time of the restructuring) and in various leadership roles within Follett. Specifically, Mr. Pantoja worked in various roles at multiple Follett bookstores across the country, including as a Store Manager at two other Follett bookstores. *Id.*

Because she had not applied for and hence had not been offered any other role at Follett, Plaintiff was separated from Follett on May 1, 2023. *Id.* Prior to her separation, Follett offered severance benefits to Plaintiff in accordance with the Follett's severance plan. Additionally, Follett provided Plaintiff with written instructions on how to locate and apply for any open positions at Follet post-restructure. *Id.* Follet also provided Plaintiff with a written reminder of her severance benefits. However, Plaintiff did not return the separation agreement, thus she did not receive any severance benefits. *Id.*

Ultimately, 5 Assistant Store Managers, including Plaintiff, were impacted by Operations Managers being offered their role through the restructuring. *Id.* The gender and age breakdown of the 5 impacted Assistant Store Managers and the 5 Operations Managers who were offered the Assistant Store Manager role post-restructure is diverse in terms of both age and gender. *Id.* It shows no inference of age nor gender discrimination.

| Store Number | Job Title | Gender | Age |
|---|---|---|---|
| 0230 | Operations Manager/ Assistant Store Manager | F | 57 |
| 0230 | Former Assistant Store Manager | F | 24 |
| 1006 | Operations Manager/ Assistant Store Manager | M | 58 |
| 1006 | Former Assistant Store Manager | F | 70 |
| 1461 | Operations Manager/ Assistant Store Manager | F | 30 |
| 1461 | Former Assistant Store Manager | M | 52 |
| 2015 | Operations Manager/Assistant Store Manager | M | 50 |
| 2015 | Former Assistant Store Manager | M | 59 |
| 2254 | Operations Manager/ Assistant Store Manager | F | 55 |
| 2254 | Former Assistant Store Manager | F | 21 |

**D.**     **The Assistant Store Manager role is opened and posted internally and externally for applicants.**

In late June of 2023, Mr. Pantoja applied for and accepted a position as a Field Accounting Analyst. Thus, the Assistant Store Manager role became vacant. As a result of the vacancy, the

opening was posted externally and internally on or about July 12, 2023. *See Exhibit D*. Below are

screenshots of the internal and external posting on the Follett Career Site.

 

*See Exhibit E*.

As a result of the posting, multiple internal and external candidates applied for the position.

Plaintiff admitted in her deposition that she did not apply for the open position despite Follett

providing her with instructions on how to apply to open roles after her separation.

> **Q. Okay. All right. And so one of the documents that was cone- -**
> **- attached to that is one that's called "Applying to Open Positions: After**
> **May 1, 2023." ... That's a two-page document there. And so did you**
> **receive that document?**
>
> **A. Yes.**
>
> **Q. Okay. And did you ever, after May 1, 2023, apply for any**
> **positions with Follett?**
>
> **A. No.**

*(T. 105:25; 106:11)*. Accordingly, Plaintiff was not among the applicants who were considered for

the position. The candidates who applied for the position were interviewed by the Store Manager

and Market Leader. In the end, Israel Teutla was selected for the role based at least in part on his past experience with Follett.

## IV.    STATEMENT OF ISSUES AND SUMMARY JUDGMENT STANDARD

Follett asks the Court to grant its summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure. Rule 56(a) requires the issuance of summary judgment "if the Movant shows that there is no genuine dispute as to any material fact and the Movant is entitled to judgment as a matter of law. The Court should state on the record the reasons for granting or denying the motion." Fed.R.Civ.P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the Court of the basis of its motion 'in identifying those portions of the record' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party meets its burden, the non-moving party must "go beyond the pleadings" and identify "specific facts" in the records "showing that there is a genuine issue for trial. *Id.* at 324; Matsushita *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,'…by 'conclude or allegations'…by 'unsubstantiated assertions,' or by only a 'centile of evidence.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Matsushita*, 475 US at 586). To meet this burden, the non-movant must "identify specific evidence in the record" and articulate the precise manner in which the evidence supports her claims. *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996). Moreover, "[t]here must be a conflict of substantial evidence to create a jury question." *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (In banc). Thus, the moving party is entitled to summary judgment if no "rational trier of fact" could find that the non-moving party

8

could prevail in her case based on the record evidence. *Resolution Trust v. Sharif-Munir-Davidson Dev. Corp.*, 992. F.2d 1398, 1401 (5th Cir. 1993).

As explained below, no genuine issue of material fact exists with respect to Plaintiff's claims against Follett. Accordingly, Follett is entitled to summary judgment.

<h2 style="text-align:center">V.    ARGUMENTS AND AUTHORITIES</h2>

**A.** **Plaintiff's age and gender discrimination claims (Counts I through IV) fail as a matter of law.**

In Counts I through IV of her lawsuit, Plaintiff alleges that she was discriminated against on the basis of her age and gender, claiming that her age and/or gender were the motivating factors and considerations in Defendant's decision to terminate her employment and for Follett's failure to rehire her when her position re-opened in violation of Chapter 21 of the Texas Labor Code. In light of the fact that Plaintiff did not apply or re-apply for the position despite Follett providing her with instructions on how to do so, the fact that Follett did not rehire Plaintiff into the job shows no inference of age or gender discrimination. Furthermore, Follett had and has no legal obligation to rehire Plaintiff or directly contact Plaintiff to inform her of that or any other open position after she separated from employment at Follett. Moreover, as set for herein, Follett has articulated and presented evidence establishing its legitimate, non-discriminatory reason for its action(s) regarding Plaintiff, and Plaintiff cannot establish pretext with respect to any Follet's action(s). There simply is no evidence to suggest that the decision to separate from Plaintiff was due to her age or gender, because it was simply due to a company-wide restructure.

Chapter 21 of the Texas Labor Code prohibits an employer from discriminating against an employee because of her sex (gender) or age. Tex. Lab. Code § 21.051(1). Chapter 21 discrimination claims are analyzed by using the same burden-shifting analysis used for Title VII claims. *See Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 583 (Tex. 2017). *See also McCoy*

*v. Texas Instruments, Inc*., 183 S.W.3d 548, 554 (Tex. App.—Dallas 2006, no pet.) ("The legislature enacted the Texas Commission on Human Rights Act ("THCRA") to correlate state law with federal law in the area of employment discrimination"; in a circumstantial evidence discrimination case, McDonnell Douglas burden shifting applies); *Mitchell v. Tex. Dep't of Crim. Justice*, No. 02-16-00100-CV, 2017 WL 632906, at *4 (Tex. App.—Fort Worth Feb. 16, 2017, no pet.) (applying McDonnell-Douglas burden-shifting framework to retaliation claims).

Thus, in cases such as this one, where there is no direct evidence of discrimination, courts apply the *McDonnell Douglas* burden-shifting analysis. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Plaintiff must first make a *prima facie* showing of discrimination by demonstrating that: (1) she is a member of a protected class; (2) she was qualified for the position at issue; (3) she was subjected to an adverse employment action; and (4) she was treated less favorably than similarly situated individuals outside her protected class under nearly identical circumstances or replaced by someone significantly younger. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001); *Texas Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 709 S.W.3d 500 (Tex. 2024), reh'g denied (May 2, 2025). If an employee establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate and non-discriminatory reason for the challenged action. *Willis v. Coca Cola Enters., Inc.,* 445 F.3d 413, 420 (5th Cir. 2006). The burden is one of production only, not persuasion. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). After the employer articulates its reason, the employee, who bears the ultimate burden to prove that this reason is mere pretext for unlawful discrimination. *Id*. In both discrimination and retaliation cases, courts may not decide whether the decision to discharge was fair, as it is a "business decision, which, in the absence of discriminatory motive, the court will not disturb." *Martin v. Kroger Co*., 65 F. Supp.

10

2d 516, 552 (S.D. Tex. 1999).

      **i.**        ***Plaintiff cannot establish a prima facie case of discrimination because she has no valid comparator evidence and cannot establish that any employee outside her protected categories received more favorable treatment.***

Plaintiff somehow claims that Follett made its decision to terminate her and not rehire her because of her age and gender or some permutation of those categories. These claims fail regardless of the category upon which she attempts to rely on because Plaintiff cannot show that another employee similarly situated to her and outside any of her protected categories was treated more favorably under nearly identical circumstances.

The Fifth Circuit defines "similarly situated" very narrowly. *Lee v. Kansas City Southern. Ry. Co*., 574 F.3d 253, 260 (5th Cir. 2009) ("The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."); *Hockman v. Westward Comm'ns, LLC*, 282 F.Supp.2d 512, 527-28 (E.D. Tex. 2003). Employees with different work responsibilities, supervisors, capabilities, work rule violations, or different disciplinary histories are not "nearly identical." *Lee*, 574 F.3d at 260 (emphasis added). And, critically, the conduct that drew the adverse employment action must be "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. *Id.*

Here, Plaintiff must, but cannot, show that a non-protected similarly situated employee was not terminated as a result of Follet's restructuring. Plaintiff simply has no evidence that any other similarly situated Assistant Store Manager received treatment that is more favorable. The indisputable evidence in this case establishes that absent any relevant disciplinary and/or performance issues, Follett chose to offer Operations Managers who worked in the same store as an Assistant Store Manager the Assistant Store Manager position post-restructure. *See Exhibit H.*

Assistant Store Managers across the company who worked in a store that also had an Operations Manager were impacted by the restructure. *Id*. The impacted Assistant Store Managers were diverse. Those whose employment was terminated consisted of 3 females and 2 males ranging from the ages 24 years to 70 years. *Id*. And the Operations Managers who got their jobs also were diverse, consisting of 3 females and 2males, ranging in age from 30 to 58. *Id*.  Indeed, Mr. Pantoja, who was offered and accepted Plaintiff's former Assistant Store Manager position, was more than 56 years of age, and hence well within the age range of people protected against age discrimination. *Id*.  The facts establish the absence of sex or age discrimination.

> **ii.    *Even if Plaintiff could establish a prima facie case of discrimination, which she cannot, she cannot establish pretext as a matter of law*.**

Follett established herein that Plaintiff was let go as part of a company-wide restructuring. *See Exhibit F*; *T.61:10-23*.  Moreover, Plaintiff did not even apply for any other jobs as Follet advised her she could do to prevent being separated from the company *Id*. A corporate restructuring or a reduction in force is a presumptively legitimate non-discriminatory reason that supports a termination action. *See EEOC v. Texas Instruments Inc.*, 100 F. 3d 1173, 1181 (5th Cir. 1996). Eliminating positions amidst department restructuring is legitimate and non-discriminatory. *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 356–57 (5th Cir. 2007). Indeed "[e]vidence of an employer's business restructuring, which may include the elimination of jobs or termination of otherwise competent employees based on seniority, satisfies the employer's burden of producing a legitimate, non-discriminatory reason for a plaintiff's termination." *Lay v. Singing River Health Sys.*, 694 Fed. Appx. 248, 254 (5th Cir. 2017) (citing *Shah v. NXP Semiconductors USA, Inc.,* 507 Fed.Appx. 483, 492 (6th Cir. 2012)).

Plaintiff's allegations are based on nothing more than her own subjective belief. However, Plaintiff's subjective belief, without more, is insufficient to establish a claim of unlawful

employment discrimination. *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004). Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to create any fact issue. *Id*. at 654. Because Follett has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment and Plaintiff cannot establish pretext or a genuine issue of material fact regarding reasons articulated by Follett, Plaintiff cannot as a matter of law establish age or gender discrimination.

      ***iii.***      ***Plaintiff's failure to rehire claim(s) also fails as a matter of law because Plaintiff admits that she did not apply for the position.***

Fifth Circuit precedent establishes that a plaintiff asserting adverse employment action based on a failure-to-hire must show that she "actually applied for" the position sought. *Thomas v. Tregre,* 913 F.3d 458, 463 (5th Cir. 2019). In this case, it is undisputed that Plaintiff did not apply or re-apply for the Assistant Store Manager position when it came open on Follett's external webpage on July 12, 2023. Indeed, Plaintiff expressly admits that she did not apply for the position. *See Plaintiff's deposition at T.106:9-10*. Accordingly, Plaintiff's failure to rehire claim(s) fails as a matter of law for this additional reason.

## VI.  CONCLUSION

For the reasons discussed herein, Defendant Follett Higher Education Group, LLC is entitled to summary judgment in its favor as a matter of law on each of Plaintiff's claims. Defendant respectfully asks that the court grant this Motion for Summary Judgment and dismiss Plaintiff's claims with prejudice. Defendant also prays for such other and further relief to which it is entitled.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

*/s/ Michael D. Mitchell*
Michael D. Mitchell
Texas Bar No. 00784615
Texas Bar No. 00784615
Brianna M. Herman
Texas Bar No. 24115515
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Allen Center
500 Dallas Street, Suite 2100
Houston, Texas  77002
Telephone: (713) 655-5756
Facsimile: (713) 655-0020
michael.mitchell@ogletree.com
brianna.herman@ogletree.com

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on July 10, 2025, the foregoing document was submitted for electronic filing with the Clerk of the Court using the CM/ECF system and served on all parties of record.

*/s/ Michael D. Mitchell*
Michael D. Mitchell